**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TODD BARTLEY, | : | |
| Plaintiff | : | |
| | : | Civil Action No. 4:11-cv-01458 |
| v. | : | |
| | : | (Chief Judge Kane) |
| SHARON TAYLOR, | : | |
| Defendant | : | |

## MEMORANDUM

Presently pending before the Court is Defendant's motion for partial summary judgment. (Doc. No. 10.)  The motion has been fully briefed and is ripe for disposition.  For the reasons stated more fully herein, the Court will grant the motion in part and deny the motion in part.

## I.    BACKGROUND

In this civil rights action filed by Plaintiff Todd Bartley, the general manager and lead investigative sports reporter for ESPN 1050, a sports programming radio station located in Williamsport, Pennsylvania, Bartley alleges that Defendant Sharon Taylor violated his First Amendment rights by suing him in state court and by using her position as the athletic director at Lock Haven University of Pennsylvania ("LHU") to deny him certain access and privileges, all because he exercised his First Amendment rights.  (Doc. No. 11 ¶¶ 1-3; Doc. No. 16 ¶¶ 1-3; see also Doc. No. 1 ¶ 11.)  In the underlying lawsuit, Taylor alleged that Bartley and other individuals published defamatory statements about her and conspired to injure her reputation. (Doc. No. 11 ¶¶ 4-5; Doc. No. 16 ¶¶ 4-6; Doc. No. 11-1.)  According to Taylor, Bartley was involved in the organization, Preserve the Legacy of Wrestling ("PLOW"), sent an email to the LHU board of directors criticizing her, and shared this email with PLOW members.  (Doc. No. 11 ¶¶ 4, 6-7.)  She further avers that PLOW members publicly distributed a pamphlet containing

1

false statements about her and that Bartley obtained records and emails from LHU demonstrating that these statements were false. (Id. ¶¶ 8, 10.) Taylor also alleges that Bartley published an article on the ESPN 1050 website under the headline, "Taylor and LHU Lose Another Court Battle," the body of which referred to a federal civil action in which she was not a party. (Id. ¶¶ 11-13.) According to Bartley, he never was a member of PLOW, never participated in the distribution of pamphlets containing statements about Taylor, and the online article he published was not libelous. (Doc. No. 16 ¶¶ 7-14.) Bartley filed a motion for summary judgment in the state court proceeding, and the state court entered summary judgment in his favor, finding that the article related to the "court battle" was not libelous and that Taylor had produced insufficient evidence of Bartley's participation in a conspiracy to submit the case to a jury. (Doc. No. 11-3.)

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted.  Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## III.   DISCUSSION

In her motion for partial summary judgment, Taylor asserts that the Noerr-Pennington doctrine bars Bartley's First Amendment retaliation claim to the extent that it is based on the lawsuit she filed against him in the Court of Common Pleas of Clinton County.  (Doc. No. 12 at 7-11.)  Additionally, Taylor contends that the doctrine of sovereign immunity bars Bartley's state law claims.  (Id. at 12-14.)  The Court will address each contention in turn.

### A.     First Amendment Retaliation Claim

In his complaint, Bartley alleges that Taylor was angered by his reporting on her job performance as the LHU athletic director and that she retaliated against him in violation of the First Amendment by, inter alia, filing a frivolous lawsuit against him in state court.  (Doc. No. 1 ¶¶ 8, 11.)  Taylor contends that Bartley's claim, to the extent that it is based on the underlying lawsuit, fails as a matter of law because the Noerr-Pennington doctrine immunizes individuals who petition the Government for redress of grievances.  (Doc. No. 12 at 7.)

The Noerr-Pennington doctrine is grounded in the First Amendment guarantee of the right to access the courts and holds that individuals who petition the Government for redress of grievances are generally immune from antitrust liability even if their petitions are motivated by anticompetitive liability.  See United Mine Workers v. Pennington, 381 U.S. 657 (1965); E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961).  Courts have held that the Noerr-Pennington doctrine is not limited to the antitrust context and "applies equally in all contexts."  White v. Lee, 227 F.3d 1214, 1231 (9th Cir. 2000); see also Bryant v. Military Dep't of the State of Miss., 597 F.3d 678, 690 (5th Cir. 2010); Herr v. Pequea Twp., 274 F.3d 109, 116, 119 (3d Cir. 2001) (questioned on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 400 (3d Cir. 2003)) ("[P]rinciples relied upon [under the Noerr-Pennington doctrine are] not limited to antitrust liability.").  Thus, the doctrine reinforces an individual's First Amendment right to petition the courts by filing certain lawsuits.  See Cal. Motor Trans. Co. v. Trucking Unlimited, 404 U.S. 508, 510-11 (1972); Herr, 274 F.3d at 115.

"Baseless litigation," however, "is not immunized by the First Amendment right to petition."  Bill Johnson's Rests. v. NLRB, 461 U.S. 731, 743 (1983).  Thus, the Noerr-

<u>Pennington</u> doctrine does not immunize individuals who initiate "sham" litigation.  <u>See Prof'l</u>

<u>Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 56 (1993).

"[D]etermining what litigation is 'sham' or 'baseless' requires the drawing of a 'difficult line' to

separate objectively reasonable claims from a 'pattern of baseless, repetitive claims . . . which

leads the fact-finder to conclude that the . . . judicial process[] [has] been abused."  <u>Bryant</u>, 597

F.3d at 690 (quoting <u>Cal. Motor Transp.</u>, 404 U.S. at 513).  In <u>Professional Real Estate Investors,</u>

<u>Inc.</u>, the United States Supreme Court held that "an objectively reasonable effort to litigate

cannot be sham regardless of subjective intent."  508 U.S. at 57.  The Supreme Court has set out

a two-part test for sham litigation:

> First, the lawsuit m ust be objectively baseless in the sense that no
> reasonable litigant could realistically expect success on the merits.
> If an objective litigant could conclude that the suit is reasonably
> calculated to elicit a favorable outcome, the suit is immunized under
> <u>Noerr</u> . . . .  Only if challenged litigation is objectively meritless may
> a court examine the litigant's subjective motivation . . . [to determine]
> whether the baseless lawsuit conceals an attempt to interfere <u>directly</u>
> with the business relationships of a competitor, through the use of the
> governmental <u>process</u> – as opposed to the <u>outcome</u> of that process .
> . . .

<u>Id.</u> at 60-61 (internal citations and quotation marks omitted) (emphases in original).

The party invoking the sham exception – here, Bartley – has the burden of showing that

the conduct at issue constitutes a sham.  <u>See, e.g.</u>, <u>IGEN Intern., Inc. v. Roche Diagnostics</u>

<u>GmbH</u>, 335 F.3d 303, 312 (4th Cir. 2003); <u>In re Flonase Antitrust Litig.</u>, 795 F. Supp. 2d 300,

311 (E.D. Pa. 2011).  "Litigation will not be considered a 'sham' so long as at least one claim in

the lawsuit has objective merit."  <u>Dentsply Intern. Inc. v. New Tech. Co.</u>, No. 96-cv-272, 1996

WL 756766, at *2 (D. Del. Dec. 19, 1996) (citing <u>Prof'l Real Estate Investors, Inc.</u>, 508 U.S. at

60); <u>see also</u> <u>In re Flonase</u>, 795 F. Supp. 2d at 310.  With respect to the first element of the sham

litigation test, an underlying lawsuit is deemed objectively baseless only if "no reasonable litigant could reasonably expect success on the merits." Prof'l Real Estate Investors, Inc., 508 U.S. at 60.  "This test looks at objective merit at the outset, not whether the claim ultimately prevailed." Bryant, 597 F.3d at 690.  In other words, this element is satisfied if the litigant did not have probable cause to institute the underlying lawsuit. Prof'l Real Estate Investors, Inc., 508 U.S. at 62; see also In re Wellbutrin Sr Antitrust Litig., No. 04-5525, 2010 WL 8425190, at *9 (E.D. Pa. Mar. 31, 2010).  Where "the predicate facts of the underlying [lawsuit]" are in dispute, Prof'l Real Estate Investors, Inc., 508 U.S. at 63, the question of objective baselessness is one for the jury. See In re Wellbutrin, 2010 WL 8425190, at *14 (collecting cases).

Here, Bartley contends that no reasonable litigant would have realistically expected the underlying lawsuit to succeed on the merits because "Taylor produced no evidence whatsoever that . . . Bartley" defamed, or conspired to defame, her.  (Doc. No. 17 at 7.)  Specifically, Bartley avers that Taylor failed to produce evidence indicating that he was a member of PLOW, that he "participated in, authorized, assented to, or ratified" allegedly libelous publications of PLOW, that the online article he published contained false information about Taylor, or that any of his criticism of Taylor's job performance was defamatory.  (Id. at 7-8.)  Taylor, however, asserts that, at the time she filed the lawsuit, she believed that Bartley and PLOW members had made false statements about her and, thus, had a realistic expectation of prevailing on her claims.  For example, Taylor has produced evidence reflecting that Bartley: (1) initiated contact with PLOW members; (2) received PLOW-related emails; (3) told PLOW members that he was "working to get the Taylor agenda exposed;" (4) sent an email to the LHU board of directors, stating that "we have taken on the task to uncover the truth in regard to some serious allegations that have been

6

made in regard to the Athletic Department and Ms. Taylor" and that "[w]e are preparing to take this matter very public with local radio shows;" and (5) suggested in the headline of his online article that Taylor did not prevail in a federal civil action to which she was not a party. (Doc. No. 11-4 at 1-5.) Record evidence also reflects that Bartley invited PLOW members to provide him with "details of encounters you have had both good and bad with LHU Athletics." (Doc. No. 16-3 at 2.) Taylor also alleged in the underlying lawsuit that PLOW published a pamphlet containing false statements about her, including that alumni donations had diminished because of dissatisfaction with Taylor's job performance and that a student-athlete's scholarship had been revoked after he reported NCAA regulation violations to Taylor. (Doc. No. 11-1 at 4-5.)

The evidence of record indicates that Bartley was very interested in reporting on LHU athletics and Taylor's job performance. Further, the record evidence reflects that Bartley investigated these topics, at least in part, with the assistance of PLOW members. In light of the facts that PLOW allegedly published false statements about Taylor, that Bartley was in contact with PLOW members, and that Bartley wrote emails and an online article criticizing Taylor, the Court finds that a reasonable person in Taylor's position may have believed that Bartley was defaming her and conspiring with others to injure her reputation. Bartley, however, has produced evidence indicating that he communicated with PLOW members solely "as a media member seeking the truth in all matters concerning LHU Athletics," that he never joined PLOW, and that Taylor was not willing to respond to his questions or requests for information. (Doc. No. 11-4 at 1-2; Doc. No. 16-3 at 2.) Thus, genuine issues of material fact exist as to whether a reasonable litigant – at the time the underlying lawsuit was commenced – would have realistically expected to succeed on her claims against Bartley. Because the Court cannot

conclude at this juncture that the underlying lawsuit was objectively meritless, the Court need not examine Taylor's subjective motivation at this time.  Prof'l Real Estate Investors, Inc., 508 U.S. at 60-61.

In sum, genuine issues of material fact preclude the Court from concluding that the Noerr-Pennington doctrine and the First Amendment right to petition the courts immunize Taylor from liability for filing the state court lawsuit.  Accordingly, the Court will deny Taylor's motion for partial summary judgment on Bartley's First Amendment retaliation claim without prejudice.

### B.      State Law Claims

In his complaint, Bartley also raises state law claims of wrongful use of civil proceedings, injurious falsehood, and defamation against Taylor.  (Doc. No. 1 at 4-7.)  Taylor contends that the doctrine of sovereign immunity bars these claims.  (Doc. No. 12 at 12-14.)  In his brief in opposition, Bartley acknowledges that Taylor is immune from liability on these claims and explains that he brought them as alternative claims in the event that Taylor denied that she acted under color of state law for purposes of his First Amendment retaliation claim. (Doc. No. 17 at 9.)  Upon review of the briefs and pleadings, there is no dispute that Taylor, in her capacity as the LHU athletic director, acted under color of state law.  (Doc. No. 1 ¶ 13; Doc. No. 4 ¶ 13.)  Thus, the Court will enter summary judgment in Taylor's favor on the state law claims.

**IV.      CONCLUSION**

For the foregoing reasons, the Court will grant Taylor's motion for partial summary judgment (Doc. No. 10) on the state law claims raised in Counts II, III, and IV of Bartley's complaint and will deny Taylor's motion with respect to the First Amendment retaliation claim raised in Count I.  An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TODD BARTLEY,** | : | |
| **Plaintiff** | : | |
| | : | **Civil Action No. 4:11-cv-01458** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **SHARON TAYLOR,** | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, on this 21st day of June 2012, **IT IS HEREBY ORDERED THAT:**

1.  Defendant Sharon Taylor's motion for partial summary judgment (Doc. No. 10) on Count I of Plaintiff Todd Bartley's complaint, to the extent that it is based on Defendant's filing of a lawsuit in the Court of Common Pleas of Clinton County, Pennsylvania, is **DENIED WITHOUT PREJUDICE**;

2.  Defendant's motion for partial summary judgment (Doc. No. 10) on Counts II, III, and IV of Plaintiff's complaint is **GRANTED**;

3.  The stay imposed on March 8, 2012 is **LIFTED**; and

4.  The Clerk of Court is directed to issue a revised case management order.


S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania